IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| GRAHAM LUNDEEN, on behalf of himself and similarly situated employees,<br>                              Plaintiff,<br>        v.<br>10 WEST FERRY STREET OPERATIONS LLC (d.b.a. Logan Inn),<br>                              Defendant. | :<br>:<br>:  2:24-cv-00109-JDW<br>:<br>:<br>:<br>:<br>:<br>: |

## CLASS ACTION SETTLEMENT AGREEMENT

The Parties (defined below) hereby **STIPULATE** and **AGREE** that the Action (defined below) is settled pursuant to the following terms and conditions and subject to judicial approval:

**1.      Definitions.**

**"Action"** means the above-captioned litigation.

**"Agreement"** means this Class Action Settlement Agreement.

**"Class Counsel"** means Winebrake & Santillo, LLC.

**"Class" or "Class Members"** means Plaintiff (defined below), Opt-In Plaintiffs (defined below), and all other individuals who were employed by Defendant (defined below) at the Logan Inn as an hourly bartender or server during any week between April 28, 2021 and January 23, 2023, and who contributed to a tip pool that resulted in at least some tips being distributed to Randy Charlins. Such individuals are listed in Exhibit A.

**"Court"** means the United States District Court for the Eastern District of Pennsylvania.

**"Defendant"** means 10 West Ferry Street Operations LLC and all of its past, present, and future officers, directors, employees, shareholders, members, investors, agents, trustees, representatives, attorneys, insurers, parent companies, subsidiaries, divisions, affiliates, related companies, predecessors, successors, and assigns.

**"Defense Counsel"** means Barley Snyder LLP.

**"Effective Date"** means 35 calendar days after the Court enters an order granting final approval of the Settlement and dismissing the Action with prejudice (or, if such order is appealed and upheld, 3 business days after all avenues of further appellate review have been exhausted).

**"Notice Form"** means the document attached as Exhibit B.

"**Opt-In Plaintiffs**" means Maximilian Friedermann, Seth Wilson, Roxanne Narasaki, Garrett Cantor, Michael Mannino, Brenda Ewart, Olivia Luff, Joseph Curry, and Anthony Viquez, who subsequently joined the Action by each filing a "Consent to Become Party Plaintiff" with the Court.

**"Parties"** means Plaintiff and Defendant.

**"Payment Amount"** means, for all Class Members who do not exclude themselves from the Settlement, the amount listed in Exhibit A.

**"Plaintiff"** means Graham Lundeen, the original, named plaintiff who commenced the Action by filing a Complaint on January 9, 2024.

**"Preliminary Approval Date"** means the date on which the Court enters the anticipated order preliminarily approving the settlement pursuant to Federal Rule of Civil Procedure ("Rule") 23(e) and authorizing distribution of the Notice Form to Class Members pursuant to Rule 23(e)(1)(B).

**"Released Claims"** means all legal or equitable claims, whether known or unknown, arising between April 28, 2021 and January 23, 2023, and asserted in or related to the Action, including, but not limited to, all such claims arising between April 28, 2021 and January 23, 2023 seeking unpaid minimum wages under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*, the Pennsylvania Minimum Wage Act, 43 P.S. §§ 333.101, *et seq.*, the Pennsylvania Wage Payment and Collection Law, 43 P.S. §§ 260.1 *et seq.*, or any other federal, state, or local statute, regulation, ordinance, or common law theory seeking unpaid wages or any associated penalties, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable or other relief.

**"Released Parties"** means Defendant and each of its respective past, present, and future managers, owners, officers, directors, agents, employees, successors, heirs, spouses, executors, partners, assigns, attorneys, representatives, consultants, associates, fiduciaries, plan sponsors, administrators, trustees, and insurers, and their respective successors and assigns.

**"Settlement"** means the terms, conditions, and obligations described in this Agreement.

2. **Maximum Settlement Amount.** Defendant's total payment under this Settlement will not under any circumstances exceed One Hundred Thousand Dollars and Zero Cents (**$100,000.00**) plus all payroll taxes/withholdings ordinarily borne by Defendant pursuant to its normal payroll practices and attributable to the Payment Amounts for all Class Members who do not exclude themselves from the Settlement.[1] Defendant will not be responsible for the payment of any costs or fees associated with the process for notifying the Class Members regarding this Settlement and process (as outlined in Paragraph 7 below) or the delivery of payments to Class Members by Class Counsel (as described in Paragraphs 10, 11, and 13 below).

3. **Stipulation to Class Certification.** The Parties stipulate, for the sole purpose of this Settlement, to certification by the Court of a Class as to all claims encompassed by this Settlement. If for any reason the Court does not approve this stipulation, or if the Settlement is lawfully terminated for any reason, the stipulated certification of the Class shall become null and void. The fact of certification shall not be cited to, used, or admissible in any other judicial, administrative, or arbitral proceeding against the Released Parties for any purpose, with respect to any issue, substantive or procedural.

4. **Conditions Precedent.** This Settlement is conditioned on approval by the Court and the passage of the Effective Date.

5. **Failure to Obtain Court Approval.** If the Settlement is not approved by the Court, it will be null and void, and all Parties will return to the *status quo ante*. During the

---

[1] Each Class Member's withholdings will be based on the Class Member's most recent W-4 form as submitted to Defendant, unless the Class Member provides an updated W-4 form to Class Counsel. In that event, Class Counsel must provide the updated W-4 form to Defense Counsel immediately upon receipt.

remainder of the litigation, the Parties will be prohibited from relying on any negotiations, papers, or orders (including any class/collective certification order) pertaining to or resulting from the Settlement.

6. **Release.**  Upon passage of the Effective Date and the fulfillment of Defendant's payment obligations in Paragraphs 10, 11, 12, and 13, all Class Members who do not exclude themselves from the Settlement (on behalf of themselves and their past, present and future agents, successors, heirs, spouses, administrators, executors, partners, assigns, representatives, and predecessors) release and forever discharge the Released Parties from the Released Claims.  In addition, Plaintiff will be bound by the General Release in Paragraph 14.

7. **Notice to Class Members.**  Within 7 calendar days after the Preliminary Approval Date, Class Counsel will mail and email the Notice Form to each Class Member. If the Postal Service returns any Notice Form to Class Counsel with a forwarding address, Class Counsel will promptly mail the Notice Form to the forwarding address.  If the Postal Service returns any package to Class Counsel without a forwarding address, Class Counsel will work diligently to obtain an updated address and will promptly mail the Notice Form to the updated address.  Class Counsel will prepare a sworn declaration describing the notice process.  This declaration will be provided to the Court along with any other papers seeking final approval of the Settlement.

8. **Exclusions From the Settlement.**  Class Members desiring to exclude themselves from the settlement must do so in writing.  Exclusion requests must be mailed to Class Counsel pursuant to the instructions in the Notice Form and must be postmarked within 63 calendar days after the Preliminary Approval Date.  Class Counsel must provide all exclusion requests to Defense Counsel immediately upon receipt and to the Court along with any other papers seeking final approval of the Settlement.  Individuals who exclude themselves pursuant to this paragraph will not be bound by the Release.

9. **Objections to the Settlement.**  Class Members desiring to object to the Settlement must do so in writing.  Objections must be mailed to Class Counsel pursuant to the instructions in the Notice Form and must be postmarked within 63 calendar days after the Preliminary Approval

Date.  Class Counsel must provide all objections to Defense Counsel immediately upon receipt and to the Court along with any other papers seeking final approval of the Settlement.

      10.    **Payments to Class Members.**  Within 7 calendar days after the Effective Date, Defendant will deliver to Class Counsel payroll checks payable to each Class Member who does not exclude themselves from the Settlement reflecting their Payment Amounts.  Class Counsel will work diligently to ensure that every check is delivered and cashed.  Defense Counsel will cooperate with Class Counsel to achieve this same goal.  On the date falling 77 calendar days after the Effective Date, Defendant will provide to Class Counsel a list containing the names and last known phone numbers (if available) of all Class Members who did not exclude themselves from the Settlement and who have not cashed their checks.  Class Counsel will work diligently to contact these individuals and ensure that their checks have been received.  Any check that remains uncashed 120 calendar days after the Effective Date will be forfeited by the Class Member, and the underlying funds (not including payroll taxes/withholdings ordinarily borne by Defendant) will be donated to the Pennsylvania IOLTA Board.  At the end of the applicable tax year, Defendant will issue to each Class Member who receives and cashes a settlement check an IRS Form W-2 reflecting the payment.

      11.    **Extra Payments to Plaintiff and Opt-In Plaintiffs.**  Plaintiff will ask the Court to approve the distribution of an extra $5,000.00 to Plaintiff and the Opt-In Plaintiffs.  These payments are included in (and not in addition to) Plaintiff's and each Opt-In Plaintiff's respective Payment Amount and paid as provided for in Paragraph 10.  Nothing prohibits Defendant from opposing these requested amounts, and the Settlement is not contingent on the Court's approval of these requested amounts.  If the Court disapproves of any portion of these requested amounts, the disapproved monies will be distributed *pro rata* to the Class Members who do not exclude themselves from the Settlement according to each of their Payment Amounts.  These extra payments will be reflected on the IRS Form W-2 that Defendant will issue to Plaintiff and each Opt-In Plaintiff, as provided for in Paragraph 10.

5

**12.** **Payment to Class Counsel.**  Plaintiff will ask the Court to approve the payment to Class Counsel of $33,000.00 in combined attorney's fees and litigation expenses.  Nothing prohibits Defendant from opposing this requested amount, and the Settlement is not contingent on the Court's approval of this requested amount.  If the Court disapproves of any portion of this requested amount, the disapproved monies will be distributed *pro rata* to the Class Members who do not exclude themselves from the Settlement according to each of their Payment Amounts.  Within 7 calendar days after the Effective Date, Defendant will deliver to Class Counsel a non-payroll check payable to Class Counsel in the amount approved by the Court.  Defendant also will issue to Class Counsel an IRS Form 1099 reflecting such payment.

**13.** **Service Award.**  Plaintiff will ask the Court to approve a service award payment to Plaintiff in the amount of $2,000.00.  This payment is in addition to Plaintiff's Payment Amount.  Nothing prohibits Defendant from opposing this requested amount, and the Settlement is not contingent on the Court's approval of this requested amount.  If the Court disapproves of any portion of this requested amount, the disapproved monies will be distributed *pro rata* to the Class Members who do not exclude themselves from the Settlement according to each of their Payment Amounts.  Within 7 calendar days after the Effective Date, Defendant will deliver to Class Counsel a non-payroll check in the amount approved by the Court.  Class Counsel will work diligently to ensure that this check is delivered to and cashed by Plaintiff.  Defendant also will issue to Plaintiff an IRS Form 1099 reflecting this payment.

**14.** **General Release by Plaintiff.**  In exchange for the additional consideration provided in the form of a service award payment to Plaintiff as set forth above in Paragraph 13, Plaintiff generally releases and discharges the Released Parties from any and all claims arising under any theory of law, including, but not limited to, contract, tort or statutory theories, that Plaintiff may have against any of the Released Parties, including, but not limited to, claims for the payment of attorney's fees, whether presently asserted or not asserted, whether accrued or unaccrued, and whether known or unknown, that relate to any matter or thing that occurred prior

to the date that Plaintiff signs this Agreement (collectively, the "Claims Released").[2] For the avoidance of doubt, this is a complete and general release to the maximum extent permitted by law and the Parties will cooperate to execute a new release providing the maximum protection to the Released Parties to the extent that this general release is not enforced in whole or in part.  Nothing in this Agreement is intended to constitute a waiver or release of any legally non-waivable claim.

15. **Dismissal with Prejudice.**  Upon final approval of this Agreement by the Court, the Action will be dismissed with prejudice in its entirety.  The Parties will request that the Court retain jurisdiction to enforce this Agreement.

16. **No Representations.**  In entering into this Settlement, no Party relies on any statements, representations, or promises not described in this Agreement.

17. **Consent.**  Each Party has carefully read and understands this Agreement and has received independent legal advice with respect to the Agreement.

18. **Successors.**  This Agreement will inure to the benefit of and be binding upon each Party's heirs, successors, and assigns.

19. **No Assignments.**  No Party has assigned or transferred, or purported to assign or transfer, to any other person or entity any rights or interests pertaining to the Action or Settlement.

20. **No Presumptions.**  In interpreting this Agreement, there will not be any presumption of interpretation against any Party.

21. **Arms' Length Transaction; Materiality of Terms.**  The Parties have negotiated all the terms and conditions of this Agreement at arms' length. All terms and conditions of this

---

[2] The Claims Released are specifically intended to include, but not intended to be limited to, all claims arising from the Plaintiff's employment with Defendant, all claims that were or could have been asserted by the Plaintiff in this lawsuit, all retaliation claims, and all claims arising under any federal, state, or local law, including, but not limited to, the Fair Labor Standards Act, Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the Age Discrimination in Employment Act (ADEA), the Equal Pay Act, the Genetic Information Non-Discrimination Act, the Employee Retirement Income Security Act (ERISA), the Family and Medical Leave Act, the Pennsylvania Human Relations Act, the Pennsylvania Minimum Wage Act, the Pennsylvania Wage Payment and Collection Law, the Pennsylvania Whistleblower Law, and the Pennsylvania Equal Pay Law, all as amended.

Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

22. **Construction.**  The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each Party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any Party by virtue of draftsmanship.

23. **No Admissions and No Prevailing Party.**  This Agreement is the result of a compromise between the Parties for the sole purpose of resolving this matter and avoiding the time and expense of further litigation.  Nothing in this Agreement constitutes an admission of liability or the propriety of class certification by any Released Party with regard to the subject matter of the Action.  The Released Parties expressly deny liability on any claim against any Released Party.  Plaintiff and other Class Members are not prevailing parties in this Action, and, therefore, neither Class Counsel, Plaintiff, nor any Class Member is entitled to attorneys' fees, costs, or expenses beyond those described in this Agreement.  Nothing herein may be construed or used as an admission or as evidence of the validity of any claim against any Released Party.

24. **Tax Liability.**  Defendant, Released Parties, Defense Counsel, and Class Counsel make no representations as to the tax treatment or legal effect of the payments called for under this Agreement.  Plaintiff, Opt-In Plaintiffs, Class Counsel, and all Class Members who do not exclude themselves from the Settlement will be solely responsible for the payment of any taxes and penalties assessed on the payments described in this Agreement.

25. **Duty to Defend.**  The Parties will support the Agreement's approval and enforcement and will defend the Agreement from any legal challenge.

26. **Warranty of Authority.**  Each signatory below warrants and represents that the signatory is competent and authorized to enter into this Agreement on behalf of the Party for whom the signatory purports to sign.

**27.** **Evidentiary Privilege.**  This Agreement falls within the protection afforded compromises and offers to compromise under Federal Rule of Evidence 408 and Pennsylvania Rule of Evidence 408.

**28.** **Applicable Law.**  This Agreement will be governed, enforced, and interpreted according to Pennsylvania law.

**29.** **Execution.**  This Agreement may be executed in counterparts, each of which will be deemed an original, but all of which taken together will constitute one and the same instrument.

**IN WITNESS WHEREOF**, and intending to be legally bound, the Parties hereby execute this Agreement on the dates indicated below:

[*signature page follows*]

Dated: __08/20/2024__          _____
                                         Plaintiff Graham Lundeen

Dated: __08/20/2024__          _____
                                         For Class Counsel

Dated: _____          _____
                                         For Defendant

Dated: _____          _____
                                         For Defense Counsel

Dated: _____

Plaintiff Graham Lundeen

Dated: _____

For Class Counsel

Dated: 8/19/24

*Jeanne Cretella*
For Defendant

Dated: 8/19/24

*David Freedman*
For Defense Counsel

Exhibit A

| NAME | PAYMENT AMOUNT CLASS MEMBERS | PAYMENT AMOUNT FLSA OPT-INS | PAYMENT AMOUNT TOTAL |
|---|---|---|---|
| ABRAHAM, DAMON | $1,086.88 | | $1,086.88 |
| BEYRER, NOEL | $104.32 | | $104.32 |
| BROZEK, NICKOLAS | $425.20 | | $425.20 |
| BURDULIS, DAVID | $87.94 | | $87.94 |
| BURTON, BENJAMIN | $1,027.97 | | $1,027.97 |
| BUSH, AUDREY | $341.28 | | $341.28 |
| CANTOR, GARRETT | $807.55 | $263.01 | $1,070.56 |
| CARTER, DOUGLAS | $1,635.56 | | $1,635.56 |
| CHEN, RYAN | $2,237.54 | | $2,237.54 |
| COREY, BARBARA | $60.61 | | $60.61 |
| CUMMINGS, STEPHANIE | $1,179.78 | | $1,179.78 |
| CURRY, JOSEPH | $4,133.28 | $1,346.18 | $5,479.46 |
| EWART, BRENDA | $2,647.59 | $862.30 | $3,509.89 |
| FOWLER, REX | $789.17 | | $789.17 |
| FRESTA, ANTHONY | $343.89 | | $343.89 |
| FRIEDERMANN, MAXIMILIAN | $1,443.58 | $470.17 | $1,913.75 |
| GOMEZ, ASHLEY | $1,044.70 | | $1,044.70 |
| GRUENWALD, CHANEL | $1,433.42 | | $1,433.42 |
| HAGGAR, ADAM | $225.31 | | $225.31 |
| HODGSON, GREGORY | $502.48 | | $502.48 |
| HOFFMAN, GARRETT RICHARD | $2,239.45 | | $2,239.45 |
| HUGHES, JOHN | $244.20 | | $244.20 |
| HUSENAJ, SARAND | $73.95 | | $73.95 |
| JARRETT, TIFFANY | $200.14 | | $200.14 |
| JONES, CHRISTINE | $2,368.33 | | $2,368.33 |
| KAISER, MADISON | $2,602.29 | | $2,602.29 |
| KATHCART, ANTHONY | $2,100.22 | | $2,100.22 |
| KEATING, CHARLES | $55.05 | | $55.05 |
| LOMAURO, CHRISTINE | $412.40 | | $412.40 |
| LONG, STEVEN | $384.92 | | $384.92 |
| LUFF, ISABELL | $272.82 | | $272.82 |
| LUFF, OLIVIA | $708.39 | $230.72 | $939.11 |
| LUNDEEN, GRAHAM | $2,804.58 | $913.43 | $3,718.01 |
| MAAK, HEATHER | $3,195.81 | | $3,195.81 |
| MANNINO, MICHAEL | $63.40 | $20.65 | $84.05 |
| MAZZAGATTI, NICOLE | $1,705.47 | | $1,705.47 |
| MCGRODY, SHANNON | $81.76 | | $81.76 |
| MERCER, ELLIOT | $341.05 | | $341.05 |
| MICHALIK, SCARLETT | $2,548.42 | | $2,548.42 |
| MULVANEY, TERESA | $1,308.17 | | $1,308.17 |
| NARASAKI, ROXANNE | $501.62 | $163.38 | $665.00 |
| NUGENT, SARAH JANET | $1,664.16 | | $1,664.16 |
| ORFE, MASON | $245.97 | | $245.97 |
| PEREZ MENDIETA, CESAR | $811.32 | | $811.32 |
| PURSELL, MELISSA | $2,774.78 | | $2,774.78 |
| RICCI, ISABELLA | $787.23 | | $787.23 |
| ROCKWOOD, AMANDA | $531.11 | | $531.11 |
| ROWEN, GABRIELLE | $248.51 | | $248.51 |
| SANTIZO, ANGEL | $1,063.84 | | $1,063.84 |
| SEGAL, LANDON | $543.28 | | $543.28 |
| SLAVTCHEFF, COLIN | $595.96 | | $595.96 |
| STEWART, KRISTEN | $380.55 | | $380.55 |
| TETTEMER, ANDREW | $162.94 | | $162.94 |
| VIQUEZ, ANTHONY | $451.39 | $147.02 | $598.41 |
| WILSON, SETH | $1,790.44 | $583.13 | $2,373.57 |
| WURST, STEPHEN | $497.16 | | $497.16 |
| YARMOLIOUK, OLEH | $562.93 | | $562.93 |
| ZENUCH, JOHN MICHAEL | $284.78 | | $284.78 |
| ZYCH, LAUREN | $833.17 | | $833.17 |
| **TOTALS:** | $60,000.00 | $5,000.00 | $65,000.00 |

Exhibit B

**NOTICE OF SETTLEMENT**

*Lundeen v. 10 West Ferry Street Operations LLC (d.b.a Logan Inn), 2:24-cv-00109-JDW*
**United States District Court, Eastern District of Pennsylvania**

TO:      [==NAME==]

YOU ARE COVERED BY THE SETTLEMENT OF THIS CLASS ACTION LAWSUIT.

THE UNITED STATES DISTRICT COURT HAS AUTHORIZED THIS NOTICE, WHICH SUMMARIZES THE TERMS OF THE SETTLEMENT AND EXPLAINS YOUR RIGHTS UNDER THE SETTLEMENT.

PLEASE READ THIS DOCUMENT CAREFULLY.

| 1. | What is the Lawsuit About? |
|---|---|

Federal and state wage laws entitle employees to a minimum wage of $7.25/hour. In satisfying this minimum wage obligation, restaurants in Pennsylvania are allowed to pay bartenders and servers a minimum of $2.83/hour and rely on customer tips to make up the difference. When restaurants do this, they are taking a "tip credit."

Restaurants that take a tip credit in paying the minimum wage are not allowed to require bartenders and servers to share tips with employees who are "managers" or "supervisors." In this lawsuit, Graham Lundeen ("**Plaintiff**") alleges that 10 West Ferry Street Operations LLC ("**Defendant**") violated this rule by requiring bartenders and servers working at the Logan Inn to share tips through a "tip pool" with an individual who held the title of "Bar Manager."

Defendant responds that Plaintiff's legal claim lacks merit and that its pay practices are legal. According to Defendant, the Bar Manager did not exercise sufficient supervisory responsibility to be a "manager" or "supervisor" whom the law would prohibit from participating in the tip pool.

The lawsuit is limited to the time period between April 28, 2021 and January 23, 2023. This time span is referred to as the "**Relevant Period**."

Defendant's payroll records indicate that you and 58 other individuals worked as an hourly bartender or server during any week during the Relevant Period and contributed to a tip pool that resulted in at least some tips being distributed to Randy Charlins (the "**Class**"). So you are a "**Class Member**" covered by this lawsuit.

| 2. | Why is there a settlement? |
|---|---|

The Court has not decided who will win the lawsuit. So both Plaintiff and Defendant run the risk of losing.

*The settlement is a compromise*. It allows both sides to avoid the costs, delays, and risks of further litigation and provides money to the bartenders and servers covered by the lawsuit.

In reaching this settlement, Defendant has not admitted that it violated any laws. Rather, Defendant expressly denies that it violated any laws and continues to assert that its pay practices were and are entirely legal.

| 3. | What does the settlement provide? |
|---|---|

The Court will decide whether the settlement is fair and reasonable. If the Court approves the settlement, a total amount of $100,000 will be distributed to Plaintiff, the Class Members, and Plaintiff's lawyers. If the Court approves the fees, expenses, and service award requested by Plaintiff and Plaintiff's lawyers, approximately $60,000 will be distributed to the 59 Class Members covered by the lawsuit based on each individual's *pro rata* share of their estimated potential damages. Additionally, an extra $5,000 will be distributed to the 10 Class Members (including Plaintiff) who previously

joined this lawsuit by returning a "Consent to Join" form that was mailed to Class Members in April 2024. You **[*did/did not*]** previously join this lawsuit. Finally, an extra $2,000 service award will be paid to Plaintiff in exchange for his general release of claims and service to the Class.

Based on your individual tip credit during the Relevant Period, you, [*name*], are entitled to [*cm percent*]% of the $60,000 available under the settlement. If you have any questions about the determination of your payment amount, please call the law firm listed in Section 8.

[FOR OPT-INS]: Additionally, and subject to Court approval, because you previously joined this lawsuit, you are entitled to $[*add for opt in*] of the $5,000 set aside for the 10 Class Members who previously joined the lawsuit. The lawyers identified in Section 8 below currently represent you. Please call them if you have any questions about how your share of the $5,000 set-aside fund was determined.

Based on the above, if the Court approves the settlement, you will receive a check in the gross amount of **$[*Payment Amount*]**. Because this payment amount is wage income, it will be issued as a payroll check and will be reduced by all ordinary payroll taxes and withholdings. These withholdings will be based on the most recent W-4 form that you submitted to Defendant, unless you contact the law firm listed in Section 8 to provide an updated W-4 form. At the end of the year, you will receive an IRS W-2 Form reflecting the payment and withholdings. You will be solely responsible for the payment of any taxes and penalties assessed on this payment.

If you have any questions about the determination of your payment amount, please call the law firm listed in Section 8.

| 4. | **How can I receive a settlement payment?** |
|---|---|

If this Notice is addressed to you, then you are covered by the settlement and ***you do not need to do anything to receive a settlement payment.*** This is true whether or not you previously "opted-in" to this lawsuit. Of course, the payment will not be made unless and until the Court approves the settlement.

| 5. | **What do I give up by receiving a settlement payment?** |
|---|---|

If you do not exclude yourself from the settlement by following the procedures in Section 6 and the Court approves the settlement, you will release and forever discharge Defendant and its affiliates[1] of all legal or equitable claims arising between April 28, 2021 and January 23, 2023 and asserted in or related to the Action, including, but not limited to, all such claims arising between April 28, 2021, and January 23, 2023 seeking unpaid minimum wages under the federal Fair Labor Standards Act ("**FLSA**"), the Pennsylvania Minimum Wage Act, the Pennsylvania Wage Payment and Collection Law, or any other federal, state, or local law or legal theory seeking unpaid wages or any associated remedies.

Importantly, the above release includes claims arising under the FLSA, which is the *federal* wage and hour law. Unlike Pennsylvania state law, the FLSA allows employees to recover extra "liquidated damages" by proving that an employer "willfully" violated the FLSA. These liquidated damages, if awarded, can result in a doubling of unpaid wages owed to an employee. If you do not exclude yourself from the settlement by following the procedures in Section 6 and the Court approves the settlement, you will waive the right to recover both wages and liquidated damages under the FLSA.

If you have any questions about the scope of this release, please call the law firm listed in Section 8.

| 6. | **How do I exclude myself from this settlement?** |
|---|---|

---

[1] Including Defendant's past, present, and former officers, directors, employees, shareholders, members, investors, agents, trustees, representatives, attorneys, insurers, parent companies, subsidiaries, divisions, affiliates, predecessors, successors, and assigns, and all past, present, and future managers, owners, officers, directors, agents, employees, successors, heirs, spouses, executors, partners, assigns, attorneys, representatives, consultants, associates, fiduciaries, plan sponsors, administrators, trustees and insurers of each of the foregoing entities and each of their respective successors and assigns.

If you do not want to participate in the settlement, then you must take steps to exclude yourself.

To exclude yourself, you must prepare a note or letter simply stating: "I wish to be excluded from the Logan Inn Wage Lawsuit." The letter or note may be typed or handwritten. Be sure to include your signature, name, address, and phone number. To be valid, your exclusion request must be postmarked no later than **[*insert date 63 days after preliminary approval*]** and be mailed to: Logan Inn Wage Lawsuit, c/o Winebrake & Santillo, LLC, 715 Twining Road, Suite 211, Dresher, PA 19025.

Importantly, if you exclude yourself from the settlement, you will <u>not</u> receive any money payment, you will <u>not</u> be legally bound by the settlement, and you will <u>not</u> waive or release any legal claims against Defendant.

| 7. | How can I object to the settlement? |

You can object to the settlement if you believe it is unfair or should not be approved. The Court will consider your objection in deciding whether to approve the settlement.

To object to the settlement, you must prepare a letter or note stating that you "object" to the settlement in the Logan Inn Wage Lawsuit. The letter or note may be handwritten. Be sure to include your signature, full name, address, and telephone number. You may (but are not required to) consult with or retain an attorney to assist you in drafting the objection. If you are not being assisted by an attorney, simply do your best to describe the reasons why you object to the settlement.

To be valid, your objection *must be postmarked on or before* **[*insert date 63 days after preliminary approval*]** and must be mailed to: Logan Inn Wage Lawsuit, c/o Winebrake & Santillo, LLC, 715 Twining Road, Suite 211, Dresher, PA 19025.

| 8. | Do I have a lawyer? |

Plaintiff and other individuals who do not exclude themselves from the settlement are represented by **Winebrake & Santillo, LLC**, 715 Twining Road, Suite 211, Dresher, PA 19025; Phone **(215) 884-2491**. Lawyers from this firm will answer your questions about the lawsuit and settlement free of charge and in strict confidence. If you call, please dial **extension 4** to speak with Michelle Tolodziecki.

| 9. | How are the lawyers, Plaintiff's service award, and the $5,000 extra payments paid? |

You will *<u>not</u>* pay any legal fees or expenses out of your individual settlement payment described in Section 3. Rather, the above firm will ask the Court to approve legal fees and expenses of $33,000 (which, after deductions for expenses, will be approximately 32.4% of the total $100,000 value of the settlement). The lawyers will also ask the Court to approve a $2,000 service award to Plaintiff in exchange for his general release of claims and service to the class; and an extra $5,000 to be distributed to the 10 Class Members (including Plaintiff) who previously joined this lawsuit by returning a "Consent to Join" form. The Court has not yet decided whether it will approve these requested fees, expenses, service award, and extra payments.

| 10. | When and where will the Court decide whether to approve the settlement? |

The Court will hold a hearing to decide whether to approve the settlement. You are not required or expected to attend that hearing. However, you certainly are welcome to attend.

The hearing will take place on __, 2024 at __ in Courtroom __ of the United States Courthouse, 601 Market Street, Philadelphia, PA 19106.

During the hearing, the Court will consider whether the settlement is fair and should be approved. The Court also will

3

consider any written objections to the settlement and will hear from any individuals covered by the lawsuit (or their legal representatives) who wish to be heard.

| **11.** | **How do I obtain more information?** |
|---|---|

This Notice summarizes the most important aspects of the proposed settlement. You can obtain further information by calling the law firm listed in Section 8.