IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| GRAHAM LUNDEEN, on behalf of himself and similarly situated employees, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| v. | : | No. 2:24-cv-00109-JDW |
| | : | |
| 10 WEST FERRY STREET OPERATIONS LLC (d.b.a. Logan Inn), | : | |
| Defendant. | : | |
| | : | |

MEMORANDUM IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF THE CLASS ACTION SETTLEMENT

Date: August 20, 2024

Peter Winebrake
Michelle L. Tolodziecki
Winebrake & Santillo, LLC
715 Twining Road, Suite 211
Dresher, PA 19025
(215) 884-2491

*Attorneys for Plaintiff*

TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................................. 1

II.   BACKGROUND ................................................................................................... 2

    A.    Legal Claims ............................................................................................... 2

    B.    Conditional Certification of the FLSA Collective ...................................... 3

    C.    Alleged Unpaid Wages ............................................................................... 3

    D.    Mediation .................................................................................................... 4

III.  THE SETTLEMENT .......................................................................................... 4

    A.    Settlement Class .......................................................................................... 4

    B.    Settlement Payment .................................................................................... 4

    C.    Notice and Payment Process ....................................................................... 5

    D.    Release ........................................................................................................ 6

IV.   ARGUMENT ...................................................................................................... 6

    A.    Preliminary Approval Is Warranted ........................................................... 6

        i. At the final approval stage, the Court "will likely be able to … approve the proposal under Rule 23(e)(2)." ...................................................................................... 8

        ii. At the final approval stage, the Court "will likely be able to . . . certify the class for purposes of judgment on the proposal." ........................................................... 12

    B.    The Notice Form and Protocols Warrant Approval .................................... 16

    C.    Winebrake & Santillo, LLC Should Be Appointed Interim Class Counsel ..................... 17

## I.  INTRODUCTION

Graham Lundeen ("Plaintiff") files this motion seeking *preliminary* approval of the settlement of this "hybrid" class/collective action lawsuit, which alleges that 10 West Ferry Street Operations LLC ("Defendant") violated the minimum wage provisions of the Fair Labor Standards Act ("FLSA") and the Pennsylvania Minimum Wage Act ("PMWA").  Defendant denies liability, yet – like Plaintiff – it has settled to avoid the risk, delay, and expense of continued litigation and, therefore, does not oppose this motion.

With the assistance of Magistrate Judge Reid, the lawsuit has been settled for $100,000 on behalf of a class comprised of Plaintiff and 58 other current and former bartenders and servers (together, "class members") at Defendant's Logan Inn restaurant.

Now, the settlement must be reviewed for fairness per Federal Rule of Civil Procedure 23's "two-stage" process, which has been described as follows:

> Review of a proposed class action settlement typically proceeds in two stages.  At the first stage, the parties submit the proposed settlement to the court, which must make "a preliminary fairness evaluation."  If the proposed settlement is preliminarily acceptable, the court then directs that notice be provided to all class members who would be bound by the proposed settlement in order to afford them an opportunity to be heard on, object to, and opt out of the settlement.  At the second stage, after class members are notified of the settlement, the court holds a formal fairness hearing where class members may object to the settlement.  If the court concludes that the settlement is "fair, reasonable and adequate," the settlement is given final approval.

*In re NFL Players' Concussion Injury Litig.*, 961 F. Supp. 2d 708, 713-14 (E.D. Pa. 2014) (internal citations omitted). [1]

_____

[1]    In seeking to obtain relief for both himself and other bartenders and servers, Plaintiff has pursued his PMWA claim pursuant to Civil Rule 23's "class action" device, while he has pursued his FLSA claim pursuant to the "collective action" device established in 29 U.S.C. § 216(b).  It is well established that class and collective actions can proceed together in a single lawsuit.  *See generally Knepper v. Rite Aid Corp.*, 675 F.3d 249 (3d Cir. 2012).  Moreover, as Judges Marston and Wiegand have recently explained, "FLSA claims may be properly released through the opt-out class settlement[.]"  *Lunemann v. Kooma III LLC*, 2024 U.S. Dist. LEXIS

We currently find ourselves at the initial "preliminary" stage of the approval process. As discussed herein, preliminary approval is warranted:

## II.    BACKGROUND

### A.  Legal Claims

The Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. §§ 333.101, *et seq.*, both entitle employees to a minimum wage of $7.25/hour. Notwithstanding, restaurants are allowed to pay servers and bartenders as little as $2.83/hour and use customer tips to offset the difference. *See generally* 29 U.S.C. § 203(m); 43 P.S. § 333.103(d). The difference between $7.25 and the hourly wage actually paid to the servers or bartenders is called a "tip credit." It is undisputed that Defendant took a tip credit in paying Plaintiff and the other class members.

While restaurants may utilize a tip credit to satisfy their minimum wage obligations to servers and bartenders, they forfeit the right to do so when they "allow[] managers or supervisors to keep any portion of employees' tips." 29 U.S.C. § 203(m)(2)(B).

Here, Plaintiff contends that Defendant violated this rule prohibiting managers or supervisors from sharing in the employees' tips because Randy Charlins ("Charlins"), who held the title of "Bar Manager", participated in the tip pool, which was mandatory for all class

---

85666, *4-5 (E.D. Pa. May 13, 2024) (Marston, J.); *Then v. Great Arrow Builders, LLC*, 2022 U.S. Dist. LEXIS 32051, *12 (W.D. Pa. Feb. 23, 2022) ("FLSA claims may be released through an opt-out class settlement.") (Wiegand, J.). Under such circumstances, the fairness of the resolution of the FLSA claim can be determined in a single step at the "final approval" stage of the Rule 23 approval process. *See, e.g., Maranzano v. S-L Dist. Co., LLC*, 2022 U.S. Dist. LEXIS 201819, *7 (M.D. Pa. Nov. 4, 2022); *Del Valle v. Empire Home Health Care*, 2021 U.S. Dist. LEXIS 153355, *1 n. 1 (E.D. Pa. Aug. 3, 2021); *Tumpa v. IOC-PA, LLC*, 2021 U.S. Dist. LEXIS 2806, *11-15 (W.D. Pa. Jan. 7, 2021); *see also Fischer v. Federal Express Corp.*, 42 F.4th 366, 377 (3rd Cir. 2022) ("FLSA collective actions contain none of these protections" applicable to the settlement of Rule 23 class actions).

members.  Plaintiff contends this is so even if the manager or supervisor performs some

customer service duties and receives some tips directly from customers. *See*, *e.g.*, *Whited v. New

Café at Greystone Gardens*, 2020 WL 1271681, 2020 U.S. Dist. LEXIS 45715 (M.D. Pa. March

17, 2020).

Defendant denies liability.  The following passage, drafted by Defense counsel,

exemplifies Defendant's opposition to this claim:

> Defendant expressly denies liability because Plaintiff's legal claims lack merit, and Defendant's pay practices at issue are legal. Plaintiff alleges that Charlins's participation in the tip pool violated the FLSA and PMWA. But Charlins did not exercise sufficient supervisory responsibility to be a "manager" or "supervisor" whom the law would prohibit from participating in the tip pool. For purposes of Section 203(m)(2)(B), a "manager" or "supervisor" is limited to an "employee whose duties match those of an [exempt] executive employee as described in § 541.100(a)(2) through (4) or § 541.101 . . . ." 29 C.F.R. § 531.52(b)(2); *see also* 34 Pa. Code § 231.112(a) (incorporating FLSA's definition of "managers or supervisors" for tip pooling purposes under PMWA).

> Here, there has been no evidence (and Plaintiff has produced none) establishing that Charlins's duties matched those of an "executive" employee, including (but not limited to) evidence establishing that he had the authority to hire or fire other employees or that his recommendations regarding that topic were given "particular weight." Moreover, Charlins's title of "Bar Manager" is not dispositive and is also misleading because his primary duty was bartending and serving customers, not management. In short, Defendant contends that Plaintiff's FLSA and PMWA claims are legally deficient and would have failed had this case proceeded through discovery and, if necessary, trial.

### B.  Conditional Certification of the FLSA Collective

This Court entered an Order conditionally certifying this FLSA collective on March 21,

2024.  *See* ECF No. 15.  Notice was mailed, and 10 individuals (including Plaintiff) opted in to

the collective.

### C.  Alleged Unpaid Wages

Defendant provided documents and information responsive to Plaintiff's discovery

requests, including the personnel files of Plaintiff and Charlins, and class-wide payroll data that

enabled Plaintiff's counsel to calculate the alleged wages owed to Plaintiff and the class. If Plaintiff were fortunate enough to prevail at trial, Plaintiff's counsel estimate that Plaintiff and the 58 other members of the class would be owed $116,833 in unpaid wages.

### D.  Mediation

After Defendant produced (and the parties analyzed) the above-mentioned payroll data, the parties attended mediation. On June 20, 2024, the parties reached the following settlement before Magistrate Judge Scott W. Reid:

### III.    THE SETTLEMENT

#### A.  Settlement Class

The settlement class consists of all individuals who, during any time between April 28, 2021 and January 23, 2023, worked as hourly bartenders or servers at the Logan Inn, and who contributed to a tip pool that resulted in at least some tips being distributed to Charlins. The parties agree that the putative class covers the 59 individuals (including Plaintiff) identified in Exhibit A to the Settlement Agreement ("Agreement").

#### B.  Settlement Payment

The settlement requires Defendant to make a maximum payment of $100,000, plus any associated employer-side taxes. *See* Agreement at ¶ 2.

The settlement contemplates that $33,000 of the fund (equaling 33% of the total settlement fund) be paid to Plaintiff's lawyers for fees and costs. *See* Agreement at ¶ 12. The settlement also contemplates a $2,000 service award for lead Plaintiff Graham Lundeen. *See* Agreement at ¶ 13.

If the above payments are approved, the class members will share in $65,000 (subject to tax withholdings).[2]  *See* Exhibit A to Agreement.  The $65,000 will be distributed as follows: all 59 class members will share in $60,000, allocated based on the class members' *pro rata* percentage share of the estimated $116,833 in unpaid wages owed to the class.  Additionally, the 10 class members who opted in to the FLSA collective ("collective members") will share in $5,000, *see id.* at ¶ 11, allocated based on the collective members' *pro rata* percentage share of the estimated unpaid wages owed to the collective.[3]

### C.  Notice and Payment Process

If this settlement is preliminarily approved, within 7 calendar days after approval, Plaintiff's counsel anticipates mailing and emailing to each class member a detailed notice form that describes the litigation and the settlement.[4]  *See id.* at ¶ 7.  This notice form is "individualized" to inform each class member of their expected payout amount and the manner by which such amount was calculated.  *See* Exhibit B to Agreement.  The Notice is discussed in more detail at pages 16-17, *infra*.  Plaintiff's counsel will work diligently to ensure that class member addresses are accurate and updated and to re-mail any notice forms that are returned by the Postal Service as undeliverable.  *See* Agreement at ¶ 7.

This is a *non-reversionary* settlement.  Class members are not required to complete a "claim form" or any other document in order to receive a settlement payment.  *See id*. at ¶ 10. With the exception of any payments attributable to putative class members who properly exclude

---

[2] Any disapproved amounts from the attorney's fees and service award will enhance the class members' pre-tax payments.  *See* Agreement at ¶¶ 12-13.

[3] Any disapproved amounts from the $5,000 extra payments to the collective members will also be re-allocated to enhance the class members' pre-tax payments.  *See* Agreement at ¶ 11.

[4] Defendant already provided each class member's mailing and email address in connection with notice of this conditionally certified collective action lawsuit.  *See* ECF No. 15 at ¶ 3.

themselves from the lawsuit, no portion of the $100,000 settlement fund will be returned to

Defendant. *See id.* Thus, Plaintiff's counsel will mail settlement checks to all class members

other than those who affirmatively exclude themselves from the settlement. *See id.* Any class

members who exclude themselves do not waive any claims against Defendant. *See id.* at ¶ 6.

Any proceeds associated with uncashed checks will be donated to the Pennsylvania IOLTA

Board. *See id.* at ¶ 10.

### D. Release

If this settlement is approved, class members who do not exclude themselves from the

settlement will be bound by a release that is limited to wage and hour claims arising between the

period at issue: April 28, 2021 and January 23, 2023. Specifically, the release is limited to:

> all legal or equitable claims, whether known or unknown, arising between April 28,
> 2021 and January 23, 2023, and asserted in or related to the Action, including, but
> not limited to, all such claims seeking unpaid minimum wages arising between
> April 28, 2021, and January 23, 2023 under the Fair Labor Standards Act, 29 U.S.C.
> §§ 201, *et seq.*, the Pennsylvania Minimum Wage Act, 43 P.S. §§ 333.101, *et seq.*,
> the Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1 *et seq.*, or
> any other federal, state, or local statute, regulation, ordinance, or common law
> theory seeking unpaid wages or any associated penalties, liquidated damages,
> punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable
> or other relief.

*Id.* at ¶ 1.

### IV.    ARGUMENT

The instant settlement represents an excellent outcome for the class members and is the

result of arms-length bargaining. As discussed herein, the Court should preliminarily approve

the settlement, endorse the contemplated notice protocols and form, appoint Winebrake &

Santillo, LLC ("W&S") to serve as interim class counsel, and schedule a final fairness hearing.

### A.  Preliminary Approval Is Warranted

Class action settlements must be approved by the Court as fair. *See* Fed. R. Civ. P.

23(e)(2).[5]  As noted at pages 1-2 *supra*, "preliminary" approval of the settlement results in class members receiving notice of the settlement.  Then, after class members have had an opportunity to object to or exclude themselves from the settlement, the Court will preside over a hearing aimed at determining whether the settlement warrants "final approval."  *See In re NFL*, 961 F. Supp. 2d at 713-14.

Civil Rule 23(e)(1), entitled "Grounds for Decision to Give Notice," addresses the pertinent standard at the preliminary approval stage:

> (e)  Settlement, Voluntary Dismissal, or Compromise.  The claims, issues, or defenses of a certified class – or a class proposed to be certified for purposes of settlement – may be settled, voluntarily dismissed, or compromised only with the court's approval.  The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:
>
> (1) *Notice to the Class.*
>
> > (A)  *Information That Parties Must Provide to the Court.* The parties must provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class.
> >
> > (B)  *Grounds for a Decision to Give Notice.* The court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal.

Fed. R. Civ. P. 23(e)(1); *see, e.g.*, *Del Valle v. Empire Home Health Care, Inc.*, 2021 WL 5534703, 2021 U.S. Dist. LEXIS 153355, *1 (E.D. Pa. Aug. 3, 2021); *In re Wawa Inc. Data Security Litig.*, 2021 WL 3276148, 2021 U.S. Dist. LEXIS 142025, *33-34 (E.D. Pa. July 30, 2021); *Hall v. Accolade, Inc.*, 2019 WL 3996621, 2019 U.S. Dist. LEXIS 143542, *4-5 (E.D. Pa. Aug. 23, 2019).

---

[5]  Our Court of Appeals has observed that "[t]he law favors" class action settlements because "substantial judicial resources can be conserved by avoiding formal litigation" and because parties "gain significantly from avoiding the costs and risks of a lengthy and complex trial."  *In re GMC Pick-Up Truck Fuel Tank Products Liability Litig.*, 55 F.3d 768, 784 (3d Cir. 1995).

> **i.** ***At the final approval stage, the Court "will likely be able to …***
> ***approve the proposal under Rule 23(e)(2)."***

With the above in mind, we turn to the first half of the preliminary approval inquiry:

whether, at the final approval stage, the Court "will likely be able to . . . approve the proposal

under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(1)(B)(i). As discussed below, each Rule 23(e)(2)

factor is likely to be satisfied at the final approval stage:

*Rule 23(e)(2)(A) – Whether Plaintiff and class counsel "have adequately represented the*

*class"*: This factor focuses "on the actual performance of counsel acting on behalf of the class."

*Caddick v. Tasting Baking Co.*, 2021 WL 1374607, 2021 U.S. Dist. LEXIS 70016, *16 (E.D. Pa.

April 12, 2021) (citing Dec. 1, 2018 Advisory Committee Note to Rule 23) (Wolson, J.); *see also*

*In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 439 (3d Cir. 2016) (class counsel

should "develop[] enough information about the case to appreciate sufficiently the value of the

claims"). Here, this factor is likely to be satisfied at the final approval stage because, prior to

settlement, the parties engaged in discovery that included the production and analysis of class-

wide payroll data, as well as the personnel files of Plaintiff and Charlins.

*Rule 23(e)(2)(B) – Whether the settlement "was negotiated at arm's length"*: This factor

is likely to be satisfied at the final approval stage because negotiations were overseen by

Magistrate Judge Reid. *See Hall*, 2019 U.S. Dist. LEXIS 143542, at *9-10; *Caddick*, 2021 U.S.

Dist. LEXIS 70016, at *17 ("[T]he participation of an independent mediator in settlement

negotiations virtually [e]nsures that the negotiations were conducted at arm's length and without

collusion between the parties.") (citation omitted).

*Rule 23(e)(2)(C)(i) – Whether the relief "is adequate, taking into account the costs, risks,*

*and delay of trial and appeal"*: This factor "balances the relief that the settlement is expected to

provide to class members against the cost and risk involved in pursuing a litigated outcome."

*Hall*, 2019 U.S. Dist. LEXIS 143542, at *10 (internal quotation omitted).  Such analysis "cannot be done with arithmetic accuracy, but it can provide a benchmark for comparison with the settlement figure."  *Id.* (internal quotation omitted).  As the Third Circuit has observed, "[t]he role of a district court is not to determine whether the settlement is the fairest possible resolution – a task particularly ill-advised given that the likelihood of success at trial . . . can only be estimated imperfectly."  *In re Baby Products Antitrust Litig.*, 708 F.3d 163, 173-74 (3d Cir. 2013).

This factor is likely to be satisfied at the final approval stage.  With respect to the "costs" and "delays" associated with continued litigation, the parties would be required to brief the validity of Defendant's arbitration agreements and class certification in an adversarial context and, if the lawsuit proceeded to trial as a class action, the Court would be required to resolve complex issues regarding the proper scope of "representative testimony."

With respect to the "risks" of continued litigation, Plaintiff may not have been able to establish that Charlins was a "supervisor" or "manager" whose duties would make him an improper participant in the tip pool.  *See* page 3 *supra*.

When viewed against the above litigation risks, the settlement delivers an excellent result to the class members.  Specifically, the settlement accounts for <u>86%</u> of the class members' alleged unpaid wages.[6]  Such a recovery compares favorably to settlements approved by this Court in other wage/overtime rights lawsuits.  *See*, *e.g.*, *Martinez v. IFA Group, Inc.*, 2019 U.S. Dist. LEXIS 200116, *6 (E.D. Pa. Nov. 19, 2019) (approving settlement in which plaintiff

---

[6] In evaluating a class settlement's fairness, "the relevant settlement amount is the total amount of the settlement even though the total settlement amount includes attorney's fees."  *Solkoff v. Pennsylvania State University*, 435 F. Supp. 3d 646, 655 (E.D. Pa. 2020); *accord Devine v. Northeast Treatment Centers, Inc.*, 2021 WL 4803819, 2021 U.S. Dist. LEXIS 197924, *10 (E.D. Pa. Oct. 14, 2021).

received "about half of his claimed wages"); *Myers v. Jani-King of Philadelphia, Inc.*, 2019 U.S. Dist. LEXIS 144929, *24-25 (E.D. Pa. Aug. 26, 2019) (approving settlement amount representing "between 20% and 39% of the maximum damages' calculations"); *Williams v. Sweet Home Healthcare*, 2018 U.S. Dist. LEXIS 191962, *11-12 (E.D. Pa. Nov. 9, 2018) (approving settlement delivering "almost half of the economic damages" to class members); *Guice v. DIRECTV, LLC*, 2018 U.S. Dist. LEXIS 88585, *6 (E.D. Pa. May 24, 2018) (approving settlement that paid plaintiffs 26-41% of allegedly unpaid wages). Even *after* deducting fees and the requested service award, the settlement accounts for <u>56%</u> of the class members' alleged unpaid wages.

Rule 23(e)(2)(C)(ii) – Effectiveness of the "proposed method of distributing relief" and "the method of processing class-member claims": This factor is likely to be satisfied at the final approval stage because class members are not required to file claim forms in order to receive payments and the notice form clearly describes the process for class members to object to or exclude themselves from the settlement. *See Hall*, 2019 U.S. Dist. LEXIS 143542, at *11-12; *Caddick*, 2021 U.S. Dist. LEXIS 70016, at *18.

Rule 23(e)(2)(C)(iii) – The terms and timing of any proposed attorney's fee award: This factor is likely to be satisfied at the final approval stage because Plaintiff's lawyers' request for fees and litigation expenses totaling 33% of the settlement fund is consistent with the fees/expenses commonly approved by this Court in other wage-rights class action settlements. *See, e.g., Caddick*, 2021 U.S. Dist. LEXIS, at *19 (observing that 33% is the median fee award in class action settlements); *Galt v. Eagleville Hospital*, 310 F. Supp. 3d 483, 497 (E.D. Pa. 2018) (characterizing 35% fee as "within the range of fee awards accepted by courts in the past"); *Altnor v. Preferred Freezer Services, Inc.* 197 F. Supp. 3d 746, 768-69 (E.D. Pa. 2016)

(characterizing 33% fee recovery as "benchmark").  As such, the requested fees/expenses are not

an impediment to *preliminary* approval, with the understanding that the requested fees/expenses

will be carefully scrutinized pursuant to the Third Circuit's *Gunter* factors at the final approval

stage.  *See Del Valle*, 2021 U.S. Dist. LEXIS 153355, at *2 n.1 (review of attorney's fees

deferred until final approval where fee request "not clearly excessive or unreasonable"); *accord*

*Flores v. Eagle Diner Corp.*, 2019 WL 394335, 2019 U.S. Dist. LEXIS 141743, *21 (E.D. Pa.

Aug. 21, 2019); *Hall*, 2019 U.S. Dist. LEXIS 143542, at *12.[7]

> *Rule 23(e)(2)(C)(iv) – Any agreement required to be identified under Rule 23(e)(3)*:  Rule
23(e)(3) requires settling parties to "file a statement identifying any agreement made in
connection with the proposal."  Here, no such agreements exist.

> *Rule 23(e)(2)(D) – Whether the settlement treats class members equitably relative to each
other*:  This factor seeks to prevent the "inequitable treatment of some class members *vis-a-vis*
others."  *Fed. R. Civ. P. 23, Advisory Committee Notes to December 1, 2018 Amendments*.  This
factor is likely to be satisfied at the final approval stage because the allocation methodology is
the result of careful analysis by Plaintiff's counsel and is based upon objectively ascertainable
payroll data.  As discussed in *section* III.B*, supra*, all class members will share in $60,000,
allocated based on their *pro rata* share of the alleged unpaid wages.

> Additionally, the 10 individuals who previously opted-in to the FLSA collective will
share in $5,000 (based on their *pro rata* share of alleged unpaid wages owed to the collective).

---

[7]  Similarly, courts generally defer any assessments of requested service awards until the final
approval stage.  *See, e.g.*, *Hall*, 2020 U.S. Dist. LEXIS 52632, at *25-33.  Such an approach is
warranted where, as here, the requested $2,000 service award compares favorably to awards
approved in other settlements resolving wage rights lawsuits.  *See, e.g., Kyem v. Merakey USA*,
2022 WL 425584, 2022 U.S. Dist. LEXIS 24657, *15-17 (E.D. Pa. Feb. 11, 2022) ($3,000
service award compared to $117,500 settlement); *Travis*, 2020 U.S. Dist. LEXIS 126762 at *7
($5,000 service award compared to $162,000 settlement).

This small additional payment to the collective members is in recognition of their enhanced litigation position: having previously opted-in, the collective members' participation in this litigation is not dependent on Plaintiff achieving class certification under Rule 23, which is a "much higher" standard than the FLSA's "similarly situated" analysis.[8]  *See Reinig v. RBS Citizens, N.A.*, 912 F.3d 115, 131-32 (3d Cir. 2018); *see also Fayad v. City of Philadelphia*, 2024 WL 1163543, 2024 U.S. Dist. LEXIS 46879, *26 (E.D. Pa. March 18, 2024) (Wolson, J.) (denying Rule 23 class certification but granting FLSA conditional certification).

In sum, at the final approval stage, the Court "will likely be able to . . . approve the proposal under Rule 23(e)(2)."  Fed. R. Civ. P. 23(e)(1)(B)(i).

### ii.  *At the final approval stage, the Court "will likely be able to . . . certify the class for purposes of judgment on the proposal."*

Having determined that the parties "will likely be able to . . . approve the proposal under Rule 23(e)(2)," we turn to the second half of the preliminary approval inquiry: whether, at the final approval stage, the Court "will likely be able to . . . certify the class."  Fed. R. Civ. P. 23(e)(1)(B)(ii).  Here, Plaintiff seeks, for the sole purpose of settlement, a class comprised of 59 individuals who, during any time between April 28, 2021 and January 23, 2023, worked as hourly bartenders or servers at the Logan Inn, and who contributed to a tip pool that resulted in at least some tips being distributed to Charlins.  Agreement at ¶ 1.

To obtain class certification, Plaintiff must satisfy Rule 23(a)'s four requirements: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.  *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 482 (3d Cir. 2015).  Next, Plaintiff must satisfy Rule 23(b)(3)'s

---

[8] In addition, in hybrid class/collective actions such as this, those individuals who are willing to join the action by returning publicly-filed consent forms while the case is still being litigated in an adversarial context provides class counsel with leverage for litigating the case on behalf of *all* individuals, including absent class members.

two additional requirements: (5) common questions of law or fact must "predominate over any questions affecting only individual members" and (6) "a class action [must be] superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  "Courts conducting this [analysis] as part of a preliminary approval motion can conduct a less rigorous analysis [than] will be required at the final approval stage."  *Caddick*, 2021 U.S. Dist. LEXIS, at *8 (citations omitted).

As discussed below, Plaintiff is likely to satisfy the six Rule 23 requirements at the final approval stage:

*Numerosity*:  The Third Circuit has held that numerosity is generally satisfied if there are more than 40 class members.  *In re NFL*, 821 F.3d at 426; *see also Caddick*, 2021 U.S. Dist. LEXIS, at *9.  Here, Rule 23(a)(1)'s numerosity requirement likely will be satisfied because the settlement class numbers 59 individuals.  *See* Exhibit A to Agreement.

*Commonality*:  The commonality "bar is not a high one," *Rodriguez v. National City Bank*, 726 F.3d 372, 382 (3d Cir. 2013), and "is easily met," *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994).  Commonality "does not require perfect identity of questions of law or fact among all class members."  *Reyes*, 802 F.3d at 486.  Since "'even a single common question will do,'" *Reyes*, 802 F.3d at 486 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)), commonality is satisfied if "'plaintiffs share at least one question of fact or law with the grievances of the prospective class,'" *id.* (quoting *Rodriguez*, 726 F.3d at 382).  Plaintiff is likely to satisfy Rule 23(a)(2)'s commonality requirement at the final approval stage because he alleges that Defendant's practice of sharing bartenders' and servers' tips with Charlins applied to every class member.  The extent to which this practice is a violation of the FLSA and PMWA is a common question that binds together all class members.

13

*Typicality*:  Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Generally speaking, lawsuits challenging the same conduct which "affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims."  *Baby Neal*, 43 F.3d at 58; *Stewart v. Abraham*, 275 F.3d 220, 227 (3d Cir. 2001).  "[E]ven relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories."  *Id.*; *accord Stewart*, 275 F.3d at 227-28.  Here, typicality is likely to be satisfied at the final approval stage.  All class members worked for Defendant as bartenders and/or servers, were paid subject to the tip credit, and shared tips with Charlins (which Plaintiff alleges invalidates the tip credit for all class members).  Simply put, the claims and defenses underlying Plaintiff's individual wage claims are generally the same as the claims and defenses underlying those of the class members.  Moreover, in attempting to quantify his potential unpaid wages, Plaintiff relies on the same payroll data that would be relied upon by other class members.

*Adequacy*:  This requirement is satisfied if both: "(a) the plaintiff's attorney [is] qualified, experienced, and generally able to conduct the proposed litigation, and (b) the Plaintiff [does] not have interests antagonistic to those of the class," *Weiss v. York Hospital*, 745 F.2d 786, 811 (3d Cir. 1984) (internal quotations omitted).  Here, these requirements are satisfied because W&S has substantial experience handling class litigation under the Nation's wage laws.  *See* Declaration of Peter Winebrake ("Winebrake Dcl.") at ¶¶ 2-4.  Moreover, Plaintiff worked as a bartender and server subject to Defendant's challenged policy, and Plaintiff's only legal claims are asserted on behalf of the class.  He has no other claims or interests.

*Predominance*:   Rule 23(b)(3) requires that "questions of law or fact common to the

members of the class predominate over any questions affecting only individual members." Fed.

R. Civ. P. 23(b)(3). The Supreme Court summarized the predominance test as follows:

> The predominance inquiry "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." When "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members."

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (internal citations omitted).

Here, Defendant's policy of sharing bartenders' and servers' tips with Charlins applied to every class member. Whether this policy made illegal Defendant's use of a tip credit is the dominant issue that applies to all class members.

*Superiority*: Rule 23(b)(3) also requires the Court "to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication," *In re Prudential Insurance Co. America Sales Practice Litig.*, 148 F.3d 283, 316 (3d Cir. 1998), and "sets out several factors relevant to the superiority inquiry," *id.* at 315-16. As discussed below, Plaintiff contends these factors are likely to favor class certification:

*First*, Rule 23(b)(3)(A) requires courts to consider class members' "interests in individually controlling the prosecution or defense of separate actions." This requirement might prevent certification where class members' individual claims are "emotionally charged or involve significant damages amounts." *See* William Rubenstein, Alba Conte, and Herbert B. Newberg, *Newberg on Class Actions* at §4:69. Here, the workers' recovery under the settlement (inclusive of fees and costs) comes to a gross average of approximately $1,695 ($100,000 *divided by* 59). *See* page 7 *supra*.

*Second*, Rule 23(b)(3)(B) requires courts to consider "the extent and nature of any

litigation concerning the controversy already begun by" class members.  This factor is not relevant because no related litigation exists.

*Third*, Rule 23(b)(3)(C) requires courts to consider the desirability of "concentrating the litigation of the claims in a particular forum."  Here, concentration of all claims in this Court makes good sense since the class members worked in New Hope, Pennsylvania, which is located within the geographic scope of this Court.

*Fourth*, Rule 23(b)(3)(D) requires the court to consider any "likely difficulties in managing the class action."  Fed. R. Civ. P. 23(b)(3)(D).  This requirement is automatically satisfied when a case is certified for settlement purposes.  *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

In sum, at the final approval stage, the Court "will likely be able to . . . certify the class."  Fed. R. Civ. P. 23(e)(1)(B)(ii).

### B.  The Notice Form and Protocols Warrant Approval

Rule 23(c)(2)(B) requires that the Court "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Any notice form distributed to the class must convey "clearly and concisely . . . in plain, easily understood language" the following information:  "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)."  Fed. R. Civ. P. 23(c)(2)(B).

Here, the above notice requirements are satisfied.  As noted earlier, the Agreement requires W&S to mail/email to each class member a detailed notice form.  *See* Agreement at ¶ 7.

These forms will be sent to the class members' best and last known addresses that were provided by Defendant. Thereafter, W&S will work to update the addresses of any class members whose notice forms are returned as undeliverable and resend such notices. *See id.* Rule 23 expressly contemplates such notice-by-mail protocols. *See* Fed. R. Civ. P. 23(c)(2)(B).

Moreover, the proposed notice form is clearly written and satisfies each of Rule 23(c)(2)(B)'s content requirements. *See* Agreement at Ex. B. In this regard, the Court is directed to Appendix 1, which demonstrates how the proposed notice form corresponds with the criteria listed in Rule 23(c)(2)(B).[9]

### C. Winebrake & Santillo, LLC Should Be Appointed Interim Class Counsel

Where, as here, a class action lawsuit is settled prior to class certification, the Court "may designate interim counsel to act on behalf of the putative class before determining whether to certify the action as a class action." *See* Fed. R. Civ. P. 23(g)(3). Then, at the final approval stage, these lawyers can seek to be appointed class counsel in conjunction with the certification of the settlement class. *See id.* at 23(g)(1). Here, W&S seeks appointment as interim class counsel. The firm has extensive experience litigating wage and hour claims on a class action basis, *see* Winebrake Dcl. at ¶¶ 2-4, and has diligently litigated this matter.

WHEREFORE, Plaintiff respectfully asks the Court to grant this motion and enter the accompanying proposed order.

Date:  August 20, 2024                                  Respectfully,

                                                        */s/ Michelle Tolodziecki*
                                                        Peter Winebrake
                                                        Michelle Tolodziecki

---

[9] Plaintiff contends that "[t]his Court's prior FLSA conditional certification (ECF No. [15]) is sufficient at the preliminary approval stage to permit the FLSA collective members to receive the appropriate court-approved notice of this settlement." *See Caddick*, 2021 U.S. Dist. LEXIS at *7-8.

Winebrake & Santillo, LLC
715 Twining Road, Suite 211
Dresher, PA 19025
(215) 884-2491

*Attorneys for Plaintiff*

APPENDIX 1

**NOTICE OF SETTLEMENT**

*Lundeen v. 10 West Ferry Street Operations LLC (d.b.a Logan Inn), 2:24-cv-00109-JDW*
**United States District Court, Eastern District of Pennsylvania**

**TO:**    [*NAME*]

**YOU ARE COVERED BY THE SETTLEMENT OF THIS CLASS ACTION LAWSUIT.**

**THE UNITED STATES DISTRICT COURT HAS AUTHORIZED THIS NOTICE, WHICH SUMMARIZES THE TERMS OF THE SETTLEMENT AND EXPLAINS YOUR RIGHTS UNDER THE SETTLEMENT.**

**PLEASE READ THIS DOCUMENT CAREFULLY.**

| **1.      What is the Lawsuit About?** |
| --- |

Federal and state wage laws entitle employees to a minimum wage of $7.25/hour.  In satisfying this minimum wage obligation, restaurants in Pennsylvania are allowed to pay bartenders and servers a minimum of $2.83/hour and rely on customer tips to make up the difference.  When restaurants do this, they are taking a "tip credit."

Restaurants that take a tip credit in paying the minimum wage are not allowed to require bartenders and servers to share tips with employees who are "managers" or "supervisors."  In this lawsuit, Graham Lundeen ("**Plaintiff**") alleges that 10 West Ferry Street Operations LLC ("**Defendant**") violated this rule by requiring bartenders and servers working at the Logan Inn to share tips through a "tip pool" with an individual who held the title of "Bar Manager."

Defendant responds that Plaintiff's legal claim lacks merit and that its pay practices are legal.  According to Defendant, the Bar Manager did not exercise sufficient supervisory responsibility to be a "manager" or "supervisor" whom the law would prohibit from participating in the tip pool.

The lawsuit is limited to the time period between April 28, 2021 and January 23, 2023.  This time span is referred to as the "**Relevant Period.**"

Defendant's payroll records indicate that you and 58 other individuals worked as an hourly bartender or server during any week during the Relevant Period and contributed to a tip pool that resulted in at least some tips being distributed to Randy Charlins (the "**Class**").  So you are a "**Class Member**" covered by this lawsuit.

> **Commented [MT1]:** Rule 23(c)(2)(B)(ii) requires notice to address "the definition of the class certified"; Rule 23(c)(2)(B)(i) requires notice to address "the nature of the action"; and Rule 23(c)(2)(B)(iii) requires notice to address "the class claims, issues, or defenses.

| **2.      Why is there a settlement?** |
| --- |

The Court has not decided who will win the lawsuit.  So both Plaintiff and Defendant run the risk of losing.

***The settlement is a compromise***.  It allows both sides to avoid the costs, delays, and risks of further litigation and provides money to the bartenders and servers covered by the lawsuit.

In reaching this settlement, Defendant has not admitted that it violated any laws.  Rather, Defendant expressly denies that it violated any laws and continues to assert that its pay practices were and are entirely legal.

| **3.      What does the settlement provide?** |
| --- |

The Court will decide whether the settlement is fair and reasonable.  If the Court approves the settlement, a total amount of $100,000 will be distributed to Plaintiff, the Class Members, and Plaintiff's lawyers.  If the Court approves the fees, expenses, and service award requested by Plaintiff and Plaintiff's lawyers, approximately $60,000 will be distributed to the 59 Class Members covered by the lawsuit based on each individual's *pro rata* share of their estimated potential damages.  Additionally, an extra $5,000 will be distributed to the 10 Class Members (including Plaintiff) who previously joined this lawsuit by returning a "Consent to Join" form that was mailed to Class Members in April 2024.  You [*did/did*

***not*]** previously join this lawsuit.  Finally, an extra $2,000 service award will be paid to Plaintiff in exchange for his general release of claims and service to the Class.

Based on your individual tip credit during the Relevant Period, you, [*name*], are entitled to [*cm percent*]% of the $60,000 available under the settlement.  If you have any questions about the determination of your payment amount, please call the law firm listed in Section 8.

[FOR OPT-INS]: Additionally, and subject to Court approval, because you previously joined this lawsuit, you are entitled to $[*add for opt in*] of the $5,000 set aside for the 10 Class Members who previously joined the lawsuit.  The lawyers identified in Section 8 below currently represent you.  Please call them if you have any questions about how your share of the $5,000 set-aside fund was determined.

Based on the above, if the Court approves the settlement, you will receive a check in the gross amount of $[*Payment Amount*].  Because this payment amount is wage income, it will be issued as a payroll check and will be reduced by all ordinary payroll taxes and withholdings.  These withholdings will be based on the most recent W-4 form that you submitted to Defendant, unless you contact the law firm listed in Section 8 to provide an updated W-4 form.  At the end of the year, you will receive an IRS W-2 Form reflecting the payment and withholdings.  You will be solely responsible for the payment of any taxes and penalties assessed on this payment.

If you have any questions about the determination of your payment amount, please call the law firm listed in Section 8.

| **4.    How can I receive a settlement payment?** |
|---|

If this Notice is addressed to you, then you are covered by the settlement and ***you do not need to do anything to receive a settlement payment.***  This is true whether or not you previously "opted-in" to this lawsuit.  Of course, the payment will not be made unless and until the Court approves the settlement.

| **5.    What do I give up by receiving a settlement payment?** |
|---|

If you do not exclude yourself from the settlement by following the procedures in Section 6 and the Court approves the settlement, you will release and forever discharge Defendant and its affiliates[1] of all legal or equitable claims arising between April 28, 2021 and January 23, 2023 and asserted in or related to the Action, including, but not limited to, all such claims arising between April 28, 2021, and January 23, 2023 seeking unpaid minimum wages under the federal Fair Labor Standards Act ("**FLSA**"), the Pennsylvania Minimum Wage Act, the Pennsylvania Wage Payment and Collection Law, or any other federal, state, or local law seeking unpaid wages or any associated remedies.

Importantly, the above release includes claims arising under the FLSA, which is the *federal* wage and hour law.  Unlike Pennsylvania state law, the FLSA allows employees to recover extra "liquidated damages" by proving that an employer "willfully" violated the FLSA.  These liquidated damages, if awarded, can result in a doubling of unpaid wages owed to an employee.  If you do not exclude yourself from the settlement by following the procedures in Section 6 and the Court approves the settlement, you will waive the right to recover both wages and liquidated damages under the FLSA.

> **Commented [MT2]:** Rule 23(c)(2)(B)(vii) requires notice to address "the binding effect of a class judgment on members under Rule 23(c)(3)."

If you have any questions about the scope of this release, please call the law firm listed in Section 8.

| **6.    How do I exclude myself from this settlement?** |
|---|

If you do not want to participate in the settlement, then you must take steps to exclude yourself.

To exclude yourself, you must prepare a note or letter simply stating:  "I wish to be excluded from the Logan Inn Wage

---

[1] Including Defendant's past, present, and former officers, directors, employees, shareholders, members, investors, agents, trustees, representatives, attorneys, insurers, parent companies, subsidiaries, divisions, affiliates, predecessors, successors, and assigns, and all past, present, and future managers, owners, officers, directors, agents, employees, successors, heirs, spouses, executors, partners, assigns, attorneys, representatives, consultants, associates, fiduciaries, plan sponsors, administrators, trustees and insurers of each of the foregoing entities and each of their respective successors and assigns.

2

Lawsuit."  The letter or note may be typed or handwritten.  Be sure to include your signature, name, address, and phone number.  To be valid, your exclusion request must be postmarked no later than [*insert date 63 days after preliminary approval*] and be mailed to:  Logan Inn Wage Lawsuit, c/o Winebrake & Santillo, LLC, 715 Twining Road, Suite 211, Dresher, PA 19025.

Importantly, if you exclude yourself from the settlement, you will <u>not</u> receive any money payment, you will <u>not</u> be legally bound by the settlement, and you will <u>not</u> waive or release any legal claims against Defendant.

**7.    How can I object to the settlement?**

You can object to the settlement if you believe it is unfair or should not be approved.  The Court will consider your objection in deciding whether to approve the settlement.

To object to the settlement, you must prepare a letter or note stating that you "object" to the settlement in the Logan Inn Wage Lawsuit.  The letter or note may be handwritten.  Be sure to include your signature, full name, address, and telephone number.  You may (but are not required to) consult with or retain an attorney to assist you in drafting the objection.  If you are not being assisted by an attorney, simply do your best to describe the reasons why you object to the settlement.

To be valid, your objection **must be postmarked on or before [**==insert date 63 days after preliminary approval==**]** and must be mailed to:  Logan Inn Wage Lawsuit, c/o Winebrake & Santillo, LLC, 715 Twining Road, Suite 211, Dresher, PA 19025.

**8.    Do I have a lawyer?**

Plaintiff and other individuals who do not exclude themselves from the settlement are represented by **Winebrake & Santillo, LLC**, 715 Twining Road, Suite 211, Dresher, PA 19025; Phone **(215) 884-2491**.  Lawyers from this firm will answer your questions about the lawsuit and settlement free of charge and in strict confidence.  If you call, please dial **extension 4** to speak with Michelle Tolodziecki.

**9.    How are the lawyers, Plaintiff's service award, and the $5,000 extra payments paid?**

You will <u>**not**</u> pay any legal fees or expenses out of your individual settlement payment described in Section 3.  Rather, the above firm will ask the Court to approve legal fees and expenses of $33,000 (which, after deductions for expenses, will be approximately 32.4% of the total $100,000 value of the settlement).  The lawyers will also ask the Court to approve a $2,000 service award to Plaintiff in exchange for his general release of claims and service to the class; and an extra $5,000 to be distributed to the 10 Class Members (including Plaintiff) who previously joined this lawsuit by returning a "Consent to Join" form.  The Court has not yet decided whether it will approve these requested fees, expenses, service award, and extra payments.

**10.    When and where will the Court decide whether to approve the settlement?**

The Court will hold a hearing to decide whether to approve the settlement.  You are not required or expected to attend that hearing.  However, you certainly are welcome to attend.

==The hearing will take place on __, 2024 at __ in Courtroom __ of the United States Courthouse, 601 Market Street, Philadelphia, PA 19106.==

During the hearing, the Court will consider whether the settlement is fair and should be approved.  The Court also will consider any written objections to the settlement and will hear from any individuals covered by the lawsuit (or their legal representatives) who wish to be heard.

**11.    How do I obtain more information?**

3

**Commented [MT3]:** Rule 23(c)(2)(B)(v) requires notice to address "that the court will exclude from the class any member who requests exclusion" and Rule 23(c)(2)(B)(vi) requires notice to address "the time and manner for requesting exclusion."

**Commented [MT4]:** Rule 23(c)(2)(B)(iv) requires notice to address "that a class member may enter an appearance through an attorney if the member so desires."

This Notice summarizes the most important aspects of the proposed settlement.  You can obtain further information by calling the law firm listed in Section 8.

4